

UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
WESTERN DIVISION

| | |
|---|---|
| DARRELL JANIS, | 5:20-CV-5047-CBK |
| Petitioner, | |
| vs. | |
| UNITED STATES OF AMERICA, | **MEMORANDUM AND ORDER** |
| Respondent. | |

## I.   BACKGROUND

Darrell Janis ("petitioner") was found guilty by a jury of his peers of one count of Abusive Sexual Contact, in violation of 18 U.S.C. §§ 1153, 2244(a)(1), 2246(3) (Count I); and of Abusive Sexual Contact violative of 18 U.S.C. §§ 1153, 2244(a)(3), 2246(3) (Count II). 5:16–CR–50126-JLV, ("CR") doc. 81.[1] The underlying criminal proceedings revolved around the petitioner's sexual assault of his 12-year-old granddaughter in late 2015.  With an advisory guideline range for the two counts totaling 144 months (the statutory maximum), United States District Court Judge Jeffrey Viken ultimately sentenced Mr. Janis to 96-months on Count I, followed by five years of supervised release; and 24-months on Count II, followed by five years of supervised release, with the two counts to run concurrent.

The petitioner appealed his conviction to the United States Court of Appeals for the Eighth Circuit, arguing namely (1) the District Court's purported failure to read a jury instruction (which was more applicable to civil litigation than criminal proceedings); and (2) challenging the government's forensic examiner's testimony concerning the victim's truthfulness.  See United States v. Janis, 898 F.3d 847 (8th Cir. 2018).  In a published

---

[1] References to the underlying criminal proceeding's docket are referred to as "C.R. doc."

opinion, the petitioner's convictions were affirmed.  Id. at 852.  However, the petitioner would nevertheless find his incarceration ended far earlier than originally expected.

During the COVID-19 pandemic, Judge Viken granted the petitioner's motion for compassionate release under the First Step Act of 2018, 18 U.S.C. § 3582(c)(1)(A), in light of his medical ailments that heightened risk of contracting the virus.  See C.R. doc. 153.  Having served just under half his sentence, the Court re-sentenced the petitioner to time-served, and immediately placed him on five years of supervised release.  See id. at 22, C.R. doc. 154.  Petitioner's five years of supervised release continue to this day.

Petitioner moved, *pro se*, to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255, under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), arguing that the United States withheld exculpatory Brady[2] evidence from his trial.  Doc. 1.  In subsequent briefing, the petitioner also sought relief for a purported freestanding innocence claim.

Mr. Janis rightly notes that an FBI agent who testified in his criminal proceedings, Mark Lucas, was repeatedly admonished by this Court for offering false testimony to a grand jury and for inconsistencies between testimony, affidavits, reports, and audio interviews.  Judge Viken and United States Magistrate Judge Donetta Wollman both have harshly criticized Agent Lucas for his conduct in three criminal matters unrelated to Janis.  See *infra* II.C.1.  Janis asserts that the government failed to hand over the exculpatory evidence, which would have materially affected his underlying criminal proceedings.  However, Agent Lucas did *not* testify at the guilt phase of petitioner's trial; rather, he only testified at the sentencing hearing concerning a disputed sentencing enhancement under the United States Sentencing Commission's advisory guidelines.  Further, the government was not put on notice about Agent Lucas' transgressions until *after* Janis was found guilty, albeit before he was sentenced.

The United States ("respondent") failed to file its answer or responsive pleading to Janis' motion in the time ordered by this Court.  See doc. 4.  While the government was

---

[2] Brady v. Maryland, 373 U.S. 83 (1963)

ordered to file its responsive briefing on or before August 14, 2020, it seemingly forgot to pursue its obligations in this matter. After the time allotted for the United States to brief expired, with no request for an extension to file or any other communication to the Court, the *pro se* litigant moved for default judgment. Doc. 7. A full *five days after* the petitioner moved for default judgment, the United States finally entered the fray, moving this Court for an extension of time to file its responsive briefing. Doc. 8. The respondent's excuse: failure to "calendar" this matter. MEMORANDUM IN SUPPORT OF GOVERNMENT'S MOTION FOR EXTENSION OF TIME TO FILE RESPONSE AND MOTION TO DENY PETITIONER'S MOTION FOR DEFAULT JUDGMENT, doc. 9 at 1. Almost a week after moving for an extension of time, the government filed its motion to dismiss for failure to state a claim upon which relief can be granted and for (vexingly) insufficient subject-matter jurisdiction over the petitioner's federal claim. Mr. Janis timely responded to the government's motion. Doc. 14. The United States did not submit a reply brief. Later, Mr. Janis moved this Court for the appointment of counsel, specifically Ms. Molly Quinn of the United States Public Defender's Office for the Districts of South Dakota and North Dakota. Doc. 16.

This Memorandum and Order tackles all outstanding motions before this Court. For the reasons stated below, (1) the petitioner's motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255, doc. 1., should be denied; (2) petitioner's motion for default judgment, doc. 2, should be denied; (3) the United States' motion for extension of time to file response and motion for order denying petitioner's motion for default judgment, doc. 7, should be granted; (4) the respondent's motion to dismiss for failure to state a claim upon which relief can be granted, doc. 11, should be granted; and (5) petitioner's motion to appoint counsel, doc. 16, should be denied.

## II.   DISCUSSION
### A. Motions for Extension of Time, Default Judgment

First, the Court must take up the United States' motion for extension of time to file a response and petitioner's related motion for default judgment. This Court has previously ordered the United States to "serve and file an answer or responsive pleading

to the motion, together with a legal brief or memorandum, on or before August 14, 2020." ORDER FOR SERVICE, doc. 4 at 3.  The government failed to do so.

Six days after the United States' answer was due, and still no filing before the Court, Mr. Janis moved this Court for a default judgment. MOTION FOR DEFAULT JUDGMENT, doc. 7.  Waiting a full *five more days*, the government moved for an extension of time to file a response and to contest petitioner's motion for default judgment. MOTION FOR EXTENSION OF TIME TO FILE RESPONSE AND MOTION FOR ORDER DENYING PETITIONER'S MOTION FOR DEFAULT JUDGMENT, doc. 8.  Why? Because the United States Attorney's Office did not "calendar" the matter. Id. at 1.  This Court makes clear its displeasure with the United States for failing to adequately prepare and act in this matter.

However, petitioner failed to follow the clear requisite steps before moving this Court for a default judgment.  "When a party has failed to plead or otherwise defend against a pleading listed in Rule 7(a), entry of default under Rule 55(a) must precede grant of a default judgment under Rule 55(b)." Johnson v. Dayton Elec. Mfg. Co., 140 F.3d 781, 783 (8th Cir. 1998) (internal quotation marks omitted).  Here, Mr. Janis did not perform the first step on path to a default judgment, specifically, he "did not file a motion for clerk's entry of default under Rule 55(a) . . . which is a prerequisite to and must precede the grant of a default judgment under Rule 55(b)." Cheeks v. Belmar, 331 F.R.D. 499, 506 (E.D. Mo. 2019).  See also Wright & Miller, § 2682, ENTRY OF DEFAULT UNDER RULE 55(a), (4th ed.).  While the Court is cognizant the petitioner is representing himself *pro se*, that "[does] not entitle him to disregard the Federal Rules of Civil Procedure." Bennett v. Dr. Pepper/Seven Up, Inc., 295 F.3d 805, 808 (8th Cir. 2002) (internal quotation marks omitted).  See also Soliman v. Johanns, 412 F.3d 920, 922 (8th Cir. 2005) ("Even pro se litigants must comply with court rules and directives.").  Accordingly, the petitioner's motion for default judgment should be denied.

Next, the Court must take up the government's motion for an extension of time filed over a *month after* this Court ordered it to first file a response.  Doc. 8.  The Court

4

only wonders how long it would have taken the United States to meaningfully litigate this matter without the petitioner's motion for default judgment. This Court "'may, for good cause, extend the time' on a party's motion 'after the time has expired if the party failed to act because of excusable neglect.'" Spirit Lake Tribe v. Jaeger, 5 F.4th 849, 854 (8th Cir. 2021) (quoting FED. R. CIV. PRO. 6(b)(1)(B)). This question is ultimately analyzed under principles of equity. Id. at 854–55. This Court considers dangers of prejudice to the petitioner, how long the delay was by the government, the reason for the respondent's delay, and whether the United States is acting in good faith. Id. See also Chorosevic v. MetLife Choices, 600 F.3d 934, 946 (8th Cir. 2010) ("Excusable neglect is an 'elastic concept' that empowers courts to accept, 'where appropriate, . . . late filings caused by inadvertence, mistake, or carelessness, as well as by intervening circumstances beyond the party's control.'") (quoting Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship, 507 U.S. 380, 392, 388 (1993)).

Here, while vexed and frustrated by the respondent's inability to adhere to filing deadlines because of failures to properly calendar obligations with this Court, the balance of equities nevertheless leans in favor of allowing for the extension of time. There are no indicia that the United States was acting in bad faith; rather, it operated under extreme carelessness for its obligations in this matter. Respondent's response and subsequent motion to dismiss were filed less than six weeks after the Court's initial deadline. While seemingly pushed to act because of the diligence of a *pro se* litigant, the United States nevertheless moved for its extension within the (outer bounds) of what would be acceptable for this Court.

In its briefing for an extension of time, the United States rightly noted that the United States Court of Appeals for the Eighth Circuit "favors adjudication on the merits." MEMORANDUM IN SUPPORT OF GOVERNMENT'S MOTION FOR EXTENSION OF TIME TO FILE RESPONSE AND MOTION TO DENY PETITIONER'S MOTION FOR DEFAULT JUDGMENT, doc. 9 at 1. "Dismissal with prejudice is an extreme sanction and should be used only in cases of willful disobedience of a court order or continued or persistent failure to prosecute a complaint." Fletcher v. S. Farm Bureau Life Ins. Co., 757 F.2d 953, 956 (8th

Cir. 1985) (internal quotation marks omitted).  See also Swink v. City of Pagedale, 810 F.2d 791, 792 n.2 (8th Cir. 1987) ("There is a strong public policy, supported by concepts of fundamental fairness, in favor of trial on the merits.").  The petitioner's motion for default judgment should be denied and the respondent's motion for an extension of time should be granted.

### B.  Standard of Review

The United States filed its motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) and Rule 12(h)(3).  Rule 12(h)(3) mandates dismissals of suit when federal courts do not hold proper subject matter jurisdiction.  Federal courts are courts of limited jurisdiction and must be wary of adjudicating claims beyond its purview.  See Badgerow v. Walters, 142 S.Ct. 1310, 1315 (2022).  "The requirement that jurisdiction be established as a threshold matter springs from the nature and limits of the judicial power of the United States and is inflexible and without exception."  Godfrey v. Pulitzer Pub. Co., 161 F.3d 1137, 1141 (8th Cir. 1998) (internal quotation marks and alterations omitted).

One such avenue for jurisdiction is via a "federal question." 28 U.S.C. § 1331. Federal question jurisdiction exists where the plaintiff brings forth a "non-frivolous claim of a federal right or remedy is sufficient to invoke federal question jurisdiction." Stanko v. Oglala Sioux Tribe, 916 F.3d 694, 698 (8th Cir. 2019) (internal quotations and alterations omitted).  Here, petitioner Janis brings forward his motion pursuant to 28 U.S.C. § 2255 before the Court that handed down the purportedly improper sentence.  In so doing, this Court is vested with subject matter jurisdiction over the matter. Accordingly, the proper standard of review is pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted.

The government's motion to dismiss for failure to state a claim is applicable to § 2255 habeas proceedings so long as its procedural commands do not conflict with habeas statutes or the Rules Governing Section 2255 Cases in the United States District Courts.  Because it is consistent, the ordinary standard of review for motions under 12(b)(6) is applicable.  See Wolfe v. United States, 2021 WL 5095953, at *5 (D.S.D.

Sept. 20, 2021) (explaining interplay between Rule 12(b)(6) and motions to vacate under 28 U.S.C. § 2255).

When reviewing a motion to dismiss under Rule 12(b)(6), the Court assumes that all facts in the petitioner's motion to vacate are true and construes any reasonable inferences from those facts in the light most favorable to the nonmoving party. Monday Rests. v. Intrepid Ins. Co., — F.4th —, 2022 WL 11940000, at *1 (8th Cir. Apr. 26, 2022). See Bell Atl. Corp. v. Twombly, 550 U.S. 544, 550 (2007); Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). "In deciding a motion to dismiss, courts ordinarily do not consider matters outside the pleadings." Gillick v. Elliott, 1 F.4th 608, 610 n.2 (8th Cir. 2021). However, courts may consider materials "necessarily embraced by the pleadings, including exhibits attached to the complaint and matters of public record." LeMay v. Mays, 18 F.4th 283, 289 (8th Cir. 2021) (internal quotation marks omitted). The complaint must contain "enough facts to state a claim to relief that is plausible on its face." Spagna v. Phi Kappa Psi, Inc., 30 F.4th 710, 715 (8th Cir. 2022) (*quoting* Twombly, 550 U.S. at 570). The factual allegations must be enough to raise specificity "above the speculative level." Richardson v. BNSF Ry. Co., 2 F.4th 1063, 1068 (8th Cir. 2021) (internal quotation marks omitted).

Nevertheless, courts "are not bound to accept as true a legal conclusion couched as a factual allegation." Stoebner v. Opportuntiy Fin., LLC, 909 F.3d 219, 225–26 (8th Cir. 2018) (*quoting* Iqbal, 556 U.S. at 678). When assessing the merits of a complaint challenged under Rule 12(b)(6), a court should "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumptions of truth." McDonough v. Anoka Cnty., 799 F.3d 931, 945–46 (8th Cir. 2015) (*quoting* Iqbal, 556 U.S. at 679).

It is well known that complaints by *pro se* plaintiffs must "be given liberal construction." Solomon v. Petray, 795 F.3d 777, 787 (8th Cir. 2015); accord Sandknop v. Missouri Dep't of Corr., 932 F.3d 739, 741–742 (8th Cir. 2019). "[A] pro se complaint, however inartfully pleaded, must be held to less stringent

standards than formal pleadings drafted by lawyers." Erickson v. Pardus, 551 U.S. 89, 94 (2007).

That said, *pro se* litigants must still present cognizable legal claims to this Court. Although the Court must take as true any well-pleaded facts, the Court need not accept "threadbare recitations of the elements of a cause of action supported by mere conclusory statements." Zink v. Lombardi, 783 F.3d 1089, 1098 (8th Cir. 2015) (*quoting* Iqbal, 556 U.S. at 678). "When we say that a pro se complaint should be given liberal construction, we mean that if the essence of an allegation is discernible . . . then the district court should construe the complaint in a way that permits the layperson's claim to be considered within the proper legal framework." Solomon, 795 F.3d at 787 (internal quotation marks omitted). But "the court need not act as a clairvoyant, trying to read the tea leaves of a pro se motion to determine what the movant actually seeks. A litigant, even a pro se one, bears some responsibility for advocating for himself." In re Heyl, 609 B.R. 194, 202 (B.A.P. 8th Cir. 2019).

### C. **Whether the Statute of Limitations can be Tolled**

Typically, petitioners have one year after their underlying conviction becomes final to file their motions for collateral review pursuant to 28 U.S.C. § 2255. See United States v. McIntosh, 332 F.3d 550, 550 (8th Cir. 2003) (per curiam) (outlining typical one year statute of limitations to file motion, barring applicable exceptions). Mr. Janis' judgment became final 90 days following the United States Court of Appeals for the Eighth Circuit's mandate on his direct appeal, the timeframe for him to petition for *certiorari* before the United States Supreme Court. See United States v. Sanchez-Gonzalez, 643 F.3d 626, 629 (8th Cir. 2011) (explaining when judgments become final). Here, petitioner received the appellate court's mandate in his original proceedings on September 18, 2018. C.R. doc. 134. 90 days later, on December 17, 2018, the judgment became final. So, Janis' original deadline to file a § 2255 motion was December 17, 2019. The question here is whether this deadline may be tolled. Two such exceptions are outlined below.

The Court must ask which provision of 28 U.S.C. § 2255(f) applies: § 2255(f)(2) concerning violations of the Constitution or laws of the United States by the government; or § 2255(f)(4) for the date new facts could reasonably have been discovered?  Both are addressed in turn.  But first, an insight into Agent Lucas' testimony related to other matters before this Court around the same time as the underlying criminal proceedings is necessary.

### 1. *Pertinent Facts*

On September 9, 2019, Judge Viken made clear that F.B.I. Special Agent Mark Lucas "testified falsely" before a federal grand jury in another sexual assault matter. United States v. Gregg, 2019 WL 4256374, at *3 (D.S.D. Sept. 9, 2019).  There, Agent Lucas "falsely told the grand jury" that the defendant, Gregg, admitted to (1) raping the victim; (2) the victim was "crying and yelling and demanding to be taken home after the alleged assault;" and (3) that Gregg saw the bruise on the victim's face.  Id. (internal quotation marks omitted).  Egregiously, "[t]he prosecutor did not correct or clarify [Agent] Lucas' false statements."  Id.  But that is not all.  Nine days later, Judge Wollman authored a scathing Report & Recommendations in a wholly separate matter, United States v. Featherman.  There, Lucas' affidavit and written report concerning the alleged transgressions of Featherman contained "inconsistencies."    United States v. Featherman, 2019 WL 7811373, at *4 (D.S.D. Sept. 18, 2019).  The defendant there "alleged discrepancies [] between [Agent] Lucas' grand jury testimony, two affidavits, 302 report[3] summarizing the interview with Mr. Featherman, and the audio interview with Mr. Featherman."  Id. at *2.  The government elected "not [to] address these inconsistencies" before Judge Wollman.  Id. at *4.  Judge Wollman made bare that "[t]his is not the first allegation of [Agent] Lucas providing inaccurate testimony before a grand jury."  Id. at *5.  She went on to cite Judge Viken's opinion in Gregg, writing that "[t]his court previously held that grand jury testimony provided by [Agent] Lucas in an alleged rape indictment was at worse a lie and at best extremely misleading."  Id. (internal quotation

---

[3] A "302" is a standard shorthand for FBI interview summaries written on FD-302 forms.

marks omitted).  The Judge went on to note that "[t]his court further determined that [Agent] Lucas' testimony in response to attorney questioning in <u>Gregg</u> was misleading at worse and unresponsive at best."  <u>Id.</u> (internal quotation marks omitted).[4]

Mr. Janis became aware of the transgressions surrounding Lucas before this Court through an article in the Lakota Times published on July 11, 2019.  <u>See</u> Brandon Ecoffey, *Judges Rule FBI Lied to Secure Indictment*, LAKOTA TIMES, June 11, 2019, available at https://www.lakotatimes.com/articles/judges-rule-fbi-lied-to-secure-indictment/.  The Lakota Times reported on these allegations after the first round of briefing in <u>Gregg</u> and after the evidentiary hearing took place, but before Judge Viken and Judge Wollman handed down their respective opinions.  In both instances, the misconduct by Lucas occurred before this case went to trial.

2. *Whether Statute of Limitations can be Tolled Because of Government's Violation of Constitution/Laws of the United States*

Pursuant to 28 U.S.C. § 2255(f)(2), petitioners' one year statute of limitations does not begin to run until "the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action."  The petitioner's argument rests on the impeachment evidence concerning Agent Lucas and his admonitions by this Court.  Janis argues that this information was withheld in violation of his rights under <u>Brady</u> and its progeny.  For this matter, then, (1) was there an impediment by the government violative of Janis' constitutional or statutory rights; and (2) if so, when was that impediment removed?  This question can be disposed on the first question.

From what this Court can decipher traversing dockets of other cases where Lucas has testified (since the respondent failed to substantively address this matter in its briefing), is the United States first was put on notice about Agent Lucas' at times casual

---

[4] Petitioner rightly notes a co-defendant of Featherman raised similar troubling concerns which were disposed of in near identical fashion by Judge Wollman.  <u>See United States v. Red Owl</u>, 2019 WL 7811359 (D.S.D. Sept. 18, 2019).

relationship with the truth on July 31, 2017. Tolin Gregg was the first defendant to raise this matter in his criminal proceedings, moving for disclosure of grand jury testimony where the agent falsely testified. See CR 17-50044-JLV, docs. 51 & 52. Mr. Gregg's motion was filed with this Court, where the United States was served as the adversarial party, on July 31, 2017. This Court, through Judge Wollman, first addressed the matter on October 13, 2017, albeit in a sealed docket entry that petitioner would not have had access to reading. CR 17-50044-JLV, doc. 70. The first public record of when the government was on notice that there may be significant impeachment evidence surrounding one of its witnesses in this matter, then, was on July 31, 2017. But Mr. Janis' trial ended on May 11, 2017. C.R. doc. 81. However, Janis was not *sentenced* until September 5, 2017. C.R. doc. 103. This means that in between being found guilty on May 11, 2017, and being sentenced on September 5, 2017, the government first became aware of potential Brady material relevant to this matter.

So, then, (1) was there a Brady obligation on the part of the government to disclose such exculpatory evidence to a defendant following a finding of guilty but before being sentenced; and (2) if the answer to the former is in the affirmative, was there a violation here? If the government's Brady obligation terminated at the time of the verdict, and not at the time of sentencing, then the United States held no obligation to provide such exculpatory evidence. See Dist. Attorney's Off. of Third Judicial Dist. v. Osborne, 557 U.S. 52, 68 (2009) (holding that prosecutors do not hold a Due Process Clause obligation to "comply with the principles of [Brady]" in the postconviction setting); see id. ("A criminal defendant proved guilty after a fair trial does not have the same liberty interests as a free man."). See also Watkins v. Rubenstein, 802 F.3d 637, 642 (4th Cir. 2015) ("And, of course, the Supreme Court has made clear that Brady only protects a defendant *before trial*.") (emphasis in original) (internal quotation marks omitted). But see Runningeagle v. Ryan, 686 F.3d 758, 772 n.6 (9th Cir. 2012) ("After a criminal conviction is *final on direct appeal*, prosecutors have no further duty under Brady to produce exculpatory evidence to a defendant.") (emphasis added); United States v. Szczerba, 897 F.3d 929, 942 (8th Cir. 2018) ("Under the rule in our circuit Brady does

not require pretrial disclosure, and due process is satisfied if the information is furnished before it is too late for the defendant to use it at *trial*.") (emphasis added) (internal quotation marks omitted).

Case law is grey on the clear delineation of when the defendant parts way with his Brady right, whether that be when found guilty, at sentencing, when the final appeal has been exhausted, or at some other juncture.   But since this matter can be disposed of on whether there was actual prejudice to the petitioner *assuming* he was still vested with the rights owed under Brady, the Court's analysis can stop there.   Additionally, it is critical to note that Lucas was not put on as a witness during the guilt phase of his trial, but rather as a witness during the sentencing process accompanied by an audio recording of a second victim.

Under Brady and its progeny, "[t]he government must disclose evidence favorable to a defendant whether requested or not."   United States v. Anwar, 880 F.3d 958, 969 (8th Cir. 2018) (internal quotation marks omitted).   Three components define a Brady violation: (1) "[t]he evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; (2) that evidence must have been suppressed by the State, either willfully or inadvertently; and (3) prejudice must have ensued."   Id. (*quoting* Strickler v. Greene, 527 U.S. 263, 281–82 (1999)).   "Evidence is material if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different . . . A reasonable probability of a different result is shown when the government's failure to disclose undermines confidence in the outcome of the trial."   White v. Steele, 853 F.3d 486, 490 (8th Cir. 2017) (internal quotation marks omitted).   Further, "Brady does not require pretrial disclosure as long as ultimate disclosure is made before it is too late for the defendant to make use of any benefits of the evidence."   United States v. Kime, 99 F.3d 870, 882 (8th Cir. 1996) (internal quotation marks omitted).   Nor does it encompass evidence that was available to the defendant via other sources.   See Helmig v. Fowler, 828 F.3d 755, 761– 62 (8th Cir. 2016).

12

Here, even if a <u>Brady</u> right exists post-conviction but pre-sentencing, when the government puts forward a witness before this Court while on notice of concerning allegations, the first two elements are readily met.  First, this evidence was undoubtedly favorable to Mr. Janis: if a government witness has a penchant to stray from the truth before this Court, that could be critical for cross-examination.  Second, the evidence was either willfully or inadvertently withheld.  The United States Attorney's Office for the District of South Dakota was first made aware, in a legal filing, of allegations surrounding Agent Lucas' veracity on July 31, 2017, in the <u>Gregg</u> matter, several months before Janis' sentencing.  The failure to disclose need not be willful; mere inadvertence on the part of the <u>Gregg</u> prosecution to not relay matters to Janis' prosecutors would suffice.  <u>See Anwar</u>, 880 F.3d at 969.  With the first two elements satisfied, assuming such a <u>Brady</u> right exists, the Court next addresses the prejudice prong.

Agent Lucas was called to testify concerning the petitioner's objection to the five-level enhancement to his advisory guideline range pursuant to engaging in a pattern of activity involving prohibited sexual conduct pursuant to U.S.S.G. §4B1.5.  The objection centered around disputes by the petitioner of engaging in sexually prohibited conduct towards his daughter, Caroline Janis (the mother of the victim in the underlying proceedings), years prior when she herself was an adolescent.  This was uncharged conduct but was put forth by the government in requesting the enhancement under §4B1.5.  At the sentencing hearing, it was clear from the transcript that the entirety of the dispute concerning the applicability of the five-level enhancement was whether Caroline Janis experienced prohibited sexual conduct by the petitioner.  <u>See</u> REDACTED PUBLIC TRANSCRIPT OF SENTENCING, C.R. doc. 131 at 13.  The United States' sole witness to argue its point was Agent Lucas.  At the hearing, Agent Lucas alluded to his recent interview with Caroline about the alleged transgression years prior.  After explaining how that interview was recorded, a clip of the recording was played for the Court.  While defense counsel cross-examined Agent Lucas where other documents and 302 reports were discussed (which could have been more effectively attacked with awareness of the potential impeachment evidence), <u>see id.</u> at 14–16, 20–22, the crux of the sentencing

13

Court's overruling of Janis' objection clearly centered on Caroline's testimony. Neither the record before this Court nor petitioner's briefing allude to any role Agent Lucas had on the guilt-phase of the trial.

This Court has listened to the audio recording of the interview. Any help the defense would have garnered through the potentially exculpatory impeachment evidence is vastly outweighed by the audio recording of Caroline during her interview with Agent Lucas. Assuming a Brady right existed at the time of sentencing, Janis was not adequately prejudiced. Further, had he been meritorious on his objection, his guideline range would not have changed. Janis had a Criminal History Category of II. The five-point enhancement brought his Total Offense Level from 34 to 39. A Total Offense Level of 39, and a Criminal History Category of II, leads to a guideline range of 292–365 months. However, the statutory maximum for the two convicted offenses was 144 months. Accordingly, his guideline range moved to 144 months. Had Janis' objection been sustained, the adjusted guideline range (with a Total Offense Level of 34 and a Criminal History Category of II), would tentatively be 168–210 months. But again, it would be altered to the statutory maximum of 144 months. And to go further, the Court ultimately sentenced Janis to 96 months (which was further reduced to less than half of that sentence on compassionate release). Whatever gain the defense would have had with Agent Lucas' alleged transgressions (as laid out by Gregg's motion, the only docketed filing at the time of sentencing in this matter), and assuming a Brady obligation existed upon the government at sentencing, the impeachment evidence would not ultimately have changed the sentencing court's overruling of petitioner's objection to the enhancement under U.S.S.G. §4B1.5(b). Accordingly, the statute of limitations cannot be tolled pursuant to 28 U.S.C. § 2255(f)(2). But it can under § 2255(f)(4).

3. *Whether Statute of Limitations may be Tolled for Newly Discovered Evidence*

Another exception to the standard one-year statute of limitations applies for petitioners who can "show [1] the existence of a new fact, while also [2] demonstrating that he acted with diligence to discover the new fact." Ingram v. United States, 932 F.3d 1084, 1088–89 (8th Cir. 2019) (internal quotation marks omitted). The diligence on the

part of the petitioner "does not require a prisoner to undertake repeated exercises in futility or to exhaust every imaginable option," but it *does* "require that a prisoner make *reasonable* efforts to discover the facts supporting his claims." Anjulo-Lopez v. United States, 541 F.3d 814, 818 (8th Cir. 2008) (internal quotation marks omitted) (emphasis in original). Under § 2255(f)(4), the petitioner has one year to file his motion from the time reasonable efforts would have made the existence of the new fact discoverable. See generally Keller v. Pringle, 867 F.3d 1072, 1075 (8th Cir. 2017) (explaining how § 2255(f)(4) "provides that the one-year limitation period may begin to run on the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.") (internal quotation marks omitted).[5]

Petitioner is tasked with (1) showing this Court the existence of a new fact; and (2) that he pursued reasonable diligence in discovering this fact. Ingram, 932 F.3d at 1088–89. Here, the new fact is the testifying agent's lack of candor in unrelated matters before this Court. Mr. Janis' trial began on May 9, 2017, meaning any newly discovered information concerning the veracity of Lucas' testimony before this Court must have taken place prior to May 9, so that it would have been within the realm of critical impeachable evidence. In the Gregg matter, Agent Lucas falsely testified before the grand jury on March 21, 2017, months prior to Janis' trial. And in Featherman, the troubling inconsistencies stem from: (1) his 302 report filed on November 18, 2016 (5:16-CR-50163-04, doc. 358-1); (2) his affidavit pertaining to the original complaint against the defendant on November 21, 2016 (id. doc. 1-1); and (3) the affidavit pertaining to the amended complaint filed on November 22, 2016 (id. doc. 6-1). All these documents were filed before this Court prior to March 21, 2017, which the respondent received as the adversarial party. Accordingly, this "new fact," i.e., that there are serious concerns in the testifying agent's testimony before this Court, was in existence prior to Janis' trial, but not reasonably knowable to him at the time.

---

[5] While the Keller Court was writing about 28 U.S.C. § 2244(d)(1)(D), which pertains to federal claims of collateral review for state prisoners, its phrasing and case law are analogous to matters under § 2255(f)(4). See Keller v. Pringle, 867 F.3d 1072, 1075 (8th Cir. 2017) ("Section 2255 sets time limits similar to those applicable to state prisoners under § 2244(d).").

Second, the petitioner was reasonably diligent in his search for this newly discoverable evidence. Again, Mr. Janis could not have found this information about the false testimony and evidence presented by Lucas that occurred *prior* to his trial until *after* he was found guilty by his peers. Only through the subsequent litigation in the Gregg and Featherman matters and publicity that it received[6] could he have been aware and discover such information through reasonable diligence. And thanks to such reasonable diligence he did find out. Through the Lakota Times' article on July 11, 2019, Mr. Janis discovered the troubling allegations laid against Agent Lucas.

Petitioner filed this action on July 13, 2020, from prison. While this is just past a year between the first publication of the concerns surrounding Lucas, first reported on July 8, 2020, Janis was incarcerated at the time and could not have discovered the information any sooner. In an environment where instantaneous access to the internet or news publications is nonexistent and mail is often delayed, the petitioner writes he learned about the article around July 20, 2019. MEMORANDUM IN SUPPORT OF PETITIONER'S RESPONSE TO GOVERNMENT'S MOTION TO DISMISS & REPLY TO GOVERNMENT'S ANSWER, doc. 15 at 1.[7] Simply put, for Mr. Janis, whose briefing denotes he was residing at FCI Beaumont in Texas at the time of filing this action and may have been in Texas when the article was first published, to have learned about this matter between July 8, 2019, and July 12, 2019 (the time of the first news story and his filing of the § 2255 motion), stretches beyond credulity. See Jimerson v. Payne, 957 F.3d 916, 927 (8th Cir. 2020) ("Diligence can be shown by prompt action on the part of the

---

[6] The Rapid City Journal also reported, on July 8, 2019, about the accusations laid against Agent Lucas. See Arielle Zionts, *In 'Exceedingly Rate' Move, Two Federal Judges Say FBI Agent Gave False Testimony*, RAPID CITY J., July 8, 2019, available at https://rapidcityjournal.com/news/local/crime-and-courts/in-exceedingly-rare-move-two-federal-judges-say-fbi-agent-gave-false-testimony/article_a71222dc-aa53-55cb-a225-c8ee3f1b4b0a.html.

[7] In his memorandum in support of petitioner's response to government's motion to dismiss and reply to government's answer, Mr. Janis writes he learned about the article "on or about July 20, 2019." Doc. 15 at 1. Alternatively, in his memorandum in support of motion under 28 U.S.C. § 2255 to vacate, set aside, or correct sentence by person in federal custody, he wrote he learned of the article "[o]n or about July 21, 2019." Doc. 2 at 2. The Court assumes the earlier date of July 20, 2019, is correct.

petitioner as soon as he is in a position to realize that he has an interest in challenging the prior conviction.") (*quoting* Johnson v. United States, 544 U.S. 295, 308 (2005)).[8]

Additionally, no court released a public order depicting allegations concerning Agent Lucas until Judge Viken published his order on September 9, 2019, in the Gregg matter.  If the petitioner's reasonable diligence alternatively began when a court first made bare the concerns surrounding Agent Lucas, then Janis' motion was timely filed within a year of the Gregg decision.  Either way, this matter is timely filed within the statutory deadline proscribed in 28 U.S.C. § 2255(f)(4).  Finding that this Court can entertain petitioner's motion, it must now turn to the substance of this matter: whether a new trial is warranted.

### D.  Petitioner's Converted Motion for Re-Sentencing

Having established that the Court can entertain the petitioner's motion for a new trial, it may now turn to its substance.  However, as the Court has explained, any possible attacks on Agent Lucas' testimony would only relate to sentencing, *not* to guilt.  Accordingly, the petitioner's motion for a new trial should be converted into a motion for re-sentencing.  First, the proper standard for determining whether Mr. Janis is owed re-sentencing must be established.

"When newly discovered evidence is the ground for a § 2255 motion, the district court should apply the same substantive test which governs a motion for a new trial under [Federal Rule of Criminal Procedure] 33 premised upon the same ground." Weaver v. United States, 793 F.3d 857, 863 (8th Cir. 2015) (internal quotation marks omitted).  But since Lucas only testified at *sentencing*, and *not* at the trial itself (and the record holds no indication of what role Lucas could have had at the guilt-phase), the petitioner's motion should be converted into a request for re-sentencing, not for a new trial under Rule 33.  Since this is not an attack on the execution of the sentence, which requires redress under 28 U.S.C. § 2241, but rather its imposition, § 2255 is the proper vehicle to entertain such a motion.

---

[8] While Jimerson concerns the similarly worded § 2244(d)(1)(D), as the Court has previously explained, *supra*, the principles squarely fall under § 2255(f)(4) as well.

"A critical error made by the sentencing court in fixing the sentence may be corrected through a § 2255 proceeding." Kortness v. United States, 514 F.2d 167, 170 (8th Cir. 1975). 28 U.S.C. § 2255 states petitioners may seek relief

> [U]pon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack.

As the Eighth Circuit has noted, "Section 2255 offers potential remedies in several circumstances, including cases shown to contain jurisdictional errors, constitutional errors, and errors of law. The first two types of errors are readily cognizable under § 2255. But when it comes to errors of law, the permissible scope of a § 2255 [petition] is severely limited." Raymond v. United States, 933 F.3d 988, 991 (8th Cir. 2019) (internal citations omitted) (alteration in original). Here, when construing the pleadings liberally, it appears that the petitioner is arguing for constitutional error via Brady. And as previously analyzed in detail, *supra*, whether such a Brady right stood at the time of sentencing remains an open question. Regardless of its answer, though, Janis is not entitled to relief. No resentencing is necessary when there was no underlying prejudice against Janis.

While this Court can entertain the petitioner's motion to vacate his sentence pursuant to the tolling granted under 28 U.S.C. § 2255(f)(4), the motion on its merits must fall when any purported Brady right at the time of sentencing fails because there was no reasonable probability that, had the impeachment evidence been disclosed to Janis, the result of the sentencing would have been different. Accordingly, the petitioner's motion to vacate, set aside, or correct sentence should be denied, and the United States' motion to dismiss should be granted.

### E. Janis' Claim of Actual Innocence

To the extent the petitioner is asserting actual innocence as a vehicle for relief, it quickly falls short. Janis conclusively, without any substantiation, asserts in his response to the United States' motion to dismiss and his "reply to government's answer," that

18

"should the Court rule in [his] favor, he then will move to dismiss all underlying indictments in light of . . . his actual innocence." Doc. 14 at 1. There is a stark difference between justifying a gateway through AEDPA's procedural impediments because of purported actual innocence and a freestanding innocence claim itself. Where the miscarriage of justice exception allows procedurally barred issues to be litigated on collateral review, freestanding claims of actual innocence reach even higher. See Barton v. Stange, 959 F.3d 867, 872 (8th Cir. 2020) (per curiam) (explaining actual innocence gateway around procedural default). The United States Supreme Court tackled the possible existence of a freestanding innocence claim in Herrera v. Collins, 506 U.S. 390 (1993), but the Court has never concluded whether such a hypothetical freestanding claim does exist, and if so, what must be demonstrated to warrant relief. See Dansby v. Hobbs, 766 F.3d 809, 816 (2014) ("The threshold, if it exists, would require more convincing proof than the gateway standard that allows for consideration of otherwise defaulted constitutional claims upon a showing of actual innocence . . . Thus, on a freestanding claim of actual innocence, it is not sufficient that a petitioner shows even that it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt.") (internal quotations omitted).

If such a claim does exist, the Supreme Court has cautioned it would be an "extraordinarily high" bar to meet. Herrera, 506 U.S. at 417. Further, petitioners with far stronger claims than here have failed under review from the United States Court of Appeals for the Eighth Circuit. See Feather v. United States, 18 F.4th 982, 986–87 (8th Cir. 2021) (rejecting freestanding actual innocence claim where petitioner brought forward affidavits from four victims reasserting prior recantations; experts questioning the qualifications, examination techniques, and medical conclusions of government's trial expert on pediatric assault; and evidence of juror bias for still failing to meet the high burden). It is so high, in fact, that it has never been reached. At the very least, it is a higher standard than that required of a "gateway" innocence claim to trump procedural default raised by AEDPA.

Assuming the petitioner is asserting actual innocence as a gateway around procedural default of his § 2255 claims, this is ultimately mooted because the Court did grant equitable tolling pursuant to § 2255(f)(4) to entertain the underlying substantive claim. Alternatively, if the petitioner is arguing for a freestanding <u>Herrera</u> innocence claim, he also falls far short.

The asserted value of the impeachment evidence for the petitioner would not have borne fruit at trial when the government had not yet been put on notice of Agent Lucas' misconduct before this Court. Accordingly, this lack of impeachment evidence could not have altered the finding of guilt rendered by the jury. Mr. Janis does not come close to meeting this extraordinarily high burden in professing his actual innocence, when faced with a deluge of evidence against him. The petitioner faced testimony from his daughter, Caroline Janis, the victim herself, Ms. Brandi Tonkel (who only testified briefly, which was the target of the petitioner's direct appeal), Nurse Mary Nielsen, as well as several exhibits introduced by the United States. Any freestanding innocence claim must fail. Critically, the Eighth Circuit has explicitly *in this matter* held that "there was substantial evidence of guilt through the testimony of the victim, which the jury found credible." <u>Janis</u>, 898 F.3d at 852.

Whether freestanding innocence claims under *Herrera* exist at all, or are merely an endangered species, is an open question. But this is no such matter where the question must be further explored when the jury had ample evidence before them to find the petitioner guilty.

## F. <u>No Evidentiary Hearing is Required</u>

Petitioner is "entitled to an evidentiary hearing '[u]nless the motion and the files and records of the case conclusively show that [he] is entitled to no relief.'" <u>Jackson v. United States</u>, 956 F.3d 1001, 1006 (8th Cir. 2020) (alterations in original) (*quoting* 28 U.S.C. § 2255(b)). <u>See also Love v. United States</u>, 949 F.3d 406, 411 (8th Cir. 2020) ("A § 2255 motion can be dismissed without a hearing if (1) the petitioner's allegations, accepted as true, would not entitle the petitioner to relief, or (2) the allegations cannot be accepted as true because they are contradicted by the record, inherently incredible, or

conclusions rather than statements of fact.") (internal quotations omitted).  No evidentiary hearing is required because (1) Mr. Janis's allegations, when accepted as true, would still not entitle him to relief; and (2) to the extent petitioner seeks an evidentiary hearing to assert his conclusory assertion of a freestanding innocence claim, it is inherently incredible and wholly contradicted by the record.  Accordingly, no evidentiary hearing is required.

### G. Petitioner is not Entitled to Court Appointed Counsel

Finally, the petitioner moves this Court for the appointment of counsel, specifically Ms. Molly Quinn, to represent him in this litigation.  Doc. 16.  Because Mr. Janis is not entitled to relief, and because he has no right to court appointed counsel in civil matters, the motion should be denied.

### III.   CONCLUSION

No doubt, Agent Lucas' false testimony and inconsistencies in Gregg, Featherman, and Red Owl could constitute exculpatory impeachment evidence in future proceedings.  But in this matter, assuming Mr. Janis had a Brady right to newly discovered evidence acquired by the government after he was found guilty but before he was sentenced – where Agent Lucas testified – any inadvertent failure to disclose would not have been prejudicial when there was no reasonable probability that it could have undermined the trial court's findings on the applicability of the sentencing enhancement pursuant to U.S.S.G. §4B1.5, when faced with the audio testimony presented by Caroline Lucas.  Further, Janis' challenge to the enhancement ultimately would not have changed his advisory guideline range of 144 months, even if his objection were sustained. Additionally, any purported Herrera claim readily falls when there was "substantial evidence of guilt" at trial.  Janis, 898 F.3d at 852.  Accordingly, the petitioner's motion to vacate, set aside, or correct his sentence should be denied.

No evidentiary hearing is necessary because Mr. Janis is not entitled to relief. Because the petitioner is not entitled to relief, his motion for the appointment of counsel also should be denied.

While the United States failed to adhere to its obligations before the Court in this matter, and only acted when pushed by the *pro se* petitioner, its motion for an extension

of time should nevertheless be granted.  And it must follow that Mr. Janis' motion for default judgment should be denied.  Going forward, the Court expects greater diligence on the part of the United States.  Nothing less will be tolerated.

IT IS HEREBY ORDERED that petitioner Darrell Janis' motion to vacate, set aside or correct sentence pursuant to 28 U.S.C. § 2255, Doc. 1, is denied.

IT IS FURTHER ORDERED that petitioner Darrell Janis' motion for default judgment, Doc. 7, is denied.

IT IS FURTHER ORDERED that the United States' motion for extension of time to file response and motion for order denying petitioner's motion for default judgment, Doc. 8, is granted.

IT IS FURTHER ORDERED that the United States' motion to dismiss for failure to state a claim upon which relief can be granted, Doc. 11, is granted.

IT IS FURTHER ORDERED that petitioner Darrell Janis' motion to appoint counsel, Doc. 16, is denied.

DATED this ____17th____ day of May, 2022

BY THE COURT:

CHARLES B. KORNMANN
United States District Judge

22